# In the
# United States Court of Appeals
# For the Ninth Circuit

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JUSTIN ANTHONY FISHER
and
JOSHUA RAY FISHER,

Defendants-Appellants.

On Appeal from the United States District Court
for the District of Nevada,

**DC No. 2:17-cr-073-APG-GWF (Hon. Andrew Gordon, J.)**

## GOVERNMENT'S ANSWERING BRIEF

JASON M. FRIERSON
United States Attorney

ELIZABETH O. WHITE
Appellate Chief

Date submitted: June 24, 2022

CHRISTOPHER BURTON
Assistant United States Attorney
District of Nevada
501 Las Vegas Blvd S., Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336
*Attorneys for the United States*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... v

I.  STATEMENT OF JURISDICTION AND BAIL STATUS ................. 1

II.  ISSUES PRESENTED FOR REVIEW ............................................... 2

    A.  Whether the district court correctly denied the Fishers' first motion to suppress because the warrant affidavit contained no false material statements or omissions.

    B.  Whether the district court correctly denied the Fishers' second motion to suppress because the Fishers had no standing to challenge the recovery of evidence that they abandoned by failing to collect it prior to selling their house to a third party more than a year before the search.

III.  STATEMENT OF THE CASE ........................................................ 2

IV.  STATEMENT OF FACTS .............................................................. 4

    A.  The Investigation .......................................................... 4

        1.  NCMEC Cybertip ..................................................... 4

        2.  Tumblr Search Warrant ............................................ 6

        3.  Identifying the Residence .......................................... 8

        4.  November 2016 Search Warrant ............................... 9

        5.  July 2018 Search Warrant ....................................... 11

    B.  The First Motion to Suppress—2016 Search Warrant ............... 13

        1.  Evidentiary Hearing ............................................... 15

　　　2.　　*Report and Recommendation* ..................................................... 18

　　　3.　　*District Court's Order* ............................................................... 19

　C.　The Second Motion to Suppress—2018 Search Warrant ............ 20

　D.　Plea Agreements and Sentencing ............................................. 21

V.　SUMMARY OF ARGUMENT ........................................................ 21

VI.　ARGUMENT .................................................................................. 22

　A.　The District Court Correctly Denied the Fishers' Motion to
　　　Suppress Evidence from the 2016 Search Warrant Because the
　　　Warrant Affidavit Contained No False Material Statements or
　　　Omissions. ................................................................................... 22

　　　1.　　*Standard of Review* ................................................................ 22

　　　2.　　*Legal Framework* ................................................................... 23

　　　3.　　*The warrant affidavit contained no false statements or
　　　　　omissions.* ................................................................................ 26

　　　4.　　*Detective Miller did not act recklessly or deliberately to mislead the
　　　　　issuing court and none of the alleged misstatements or omissions
　　　　　were material.* ......................................................................... 31

　B.　The District Court Correctly Denied the Fishers' Motion to
　　　Suppress Evidence From the 2018 Search Warrant Because the
　　　Fishers Had No Standing to Challenge the Recovery of the
　　　Devices, Which They Abandoned by Failing to Collect them Prior
　　　to Selling the House to a Third Party More Than a Year Before the
　　　2018 Search. ............................................................................... 34

　　　1.　　*Standard of Review* ................................................................ 34

2. *The Fishers lack standing to challenge the 2018 Search Warrant.* ................................................................ 34

3. *The attenuated basis exception to the exclusionary rule applies.* .. 38

VII. CONCLUSION ................................................................. 43

VIII. STATEMENT OF RELATED CASES ............................................. 44

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Federal Cases**

*Bill v. Brewer*, 799 F.3d 1295 (9th Cir. 2015) ................................................. 23

*Brown v. Illinois*, 422 U.S. 590 (1975) ........................................................... 39

*Chism v. Washington State*, 661 F.3d 380 (9th Cir. 2011) ..................... 27, 28, 29

*Dalia v. United States*, 441 U.S. 238 (1979) .................................................... 23

*Franks v. Delaware*, 438 U.S. 154 (1978) ....................................................*passim*

*Illinois v. Gates*, 462 U.S. 213 (1983) ........................................................23, 24

*Maisano v. Welcher*, 940 F.2d 499 (9th Cir. 1991) .......................................... 35

*Manrique v. United States*, 137 S. Ct. 1266 (2017) .............................................. 1

*Penn. Bd. of Probation & Parole v. Scott*, 524 U.S. 357 (1998) ......................... 42

*Schneider v. County of San Diego*, 28 F.3d 89 (9th Cir. 1994) .......................... 35

*Segura v. United States*, 468 U.S. 796 (1984) .................................................. 41

*Smith v. Maryland*, 442 U.S. 735 (1979) ......................................................... 37

*United States v. Bennett*, 219 F.3d 1117 (9th Cir. 2000) ................................... 24

*United States v. Cella*, 568 F.2d 1266 (9th Cir. 1977) .......................... 34, 35, 36

*United States v. Davis*, 624 F.3d 508 (9th Cir. 2010) ....................................... 38

*United States v. Dennis*, 625 F.2d 782 (8th Cir. 1980) ..................................... 26

*United States v. DiCesare*, 765 F.2d 890 (9th Cir. 1985) ..............................24, 25

*United States v. Gonzalez, Inc.*, 412 F.3d 1102 (9th Cir. 2005) .......................... 34

*United States v. Gorman*, 859 F.3d 706 (9th Cir. 2017) .................................... 39

*United States v. Gourde*, 440 F.3d 1065 (9th Cir. 2006) ................................... 24

*United States v. Johns*, 948 F.2d 599 (9th Cir. 1991) ...................................26, 33

*United States v. Lefkowitz*, 618 F.2d 1313 (9th Cir. 1980) ............................... 24

*United States v. Lopez-Cruz*, 730 F.3d 803 (9th Cir. 2013)............................... 37

*United States v. Martinez-Rodriguez*, 633 F. App'x 456 (9th Cir. 2016) ............ 40

*United States v. Nordling*, 804 F.2d 1466 (9th Cir. 1986) ................................. 35

*United States v. Norris*, 942 F.3d 902 (9th Cir. 2019) ...................................... 22

*United States v. Peterson*, 995 F.3d 1061 (9th Cir. 2021)................................. 29

*United States v. Ramirez–Sandoval*, 872 F.2d 1392 (9th Cir. 1989) .................. 39

*United States v. Smith*, 155 F.3d 1051 (9th Cir. 1998)................................39, 41

*United States v. Smith*, 588 F.2d 737 (9th Cir. 1978)....................................... 25

*United States v. Stanert*, 762 F.2d 775 (9th Cir. 1985) ........................ 24, 25, 33

*United States v. Underwood*, 725 F.3d 1076 (9th Cir. 2013) ............................ 23

*United States v. Ventresca*, 380 U.S. 102 (1965) ............................................. 23

*United States v. Ziegler*, 474 F.3d 1184 (9th Cir. 2007).................................... 37

*Utah v. Strieff*, 136 S. Ct. 2056 (2016) ......................................................39, 42

*Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294 (1967) .............................. 23

*Wong Sun v. United States*, 371 U.S. 471 (1963)............................................. 38

## Federal Statutes

18 U.S.C. § 1512 ................................................................................ 3

18 U.S.C. § 2251 ........................................................................... 2, 3

18 U.S.C. § 2252 ........................................................................... 2, 3

18 U.S.C. § 2422 ........................................................................... 2, 3

18 U.S.C. § 3231 ................................................................................ 1

28 U.S.C. § 1291 ................................................................................ 1

42 U.S.C. § 1983 .............................................................................. 27

## State Statutes

Nev. Rev. Stat. § 118A.030 ............................................................ 36

## Federal Rules

Fed. R. App. P. 4 ............................................................................... 1

Fed. R. App. P. 32 ........................................................................... 45

# I.

## STATEMENT OF JURISDICTION AND BAIL STATUS

Defendants-Appellants Justin and Joshua Fisher[1] appeal from judgments of conviction in a criminal case. The district court had jurisdiction under 18 U.S.C. § 3231; imposed sentences on March 2, 2020; and entered judgments on March 5, 2020.[2] 3-ER-321, 343. Justin and Joshua filed timely notices of appeal on March 11 and March 10, 2020, respectively.[3] 3-ER-365, 367; *see* Fed. R. App. P. 4(b)(1). This Court has jurisdiction under 28 U.S.C. § 1291.

Justin is in the custody of the Bureau of Prisons at Petersburg Medium FCI. His expected release date is September 22, 2042. *See* www.bop.gov. Joshua is in the custody of the Bureau of Prisons at Butner Medium I FCI. His expected release date is July 24, 2038. *See* www.bop.gov.

---

[1]     For clarity, this brief refers to the defendants individually by their first names, and collectively as "the Fishers" or "the defendants."

[2]     "ER" denotes Justin and Joshua Fishers' Excerpts of Record. "SER" denotes the government's Supplemental Excerpts of Record. "OB" denotes Defendants' Opening Brief. "CR" denotes the district court docket.

[3]     Justin and Joshua did not file amended notices of appeal (or new appeals) from the amended judgments, which imposed restitution. Because they do not seek to appeal the restitution orders, the government does not question the validity of their notices of appeal. But if the Fishers seek to raise any challenge to the restitution orders, the government will object to their failure to file separate notices of appeal from the amended judgments. *See Manrique v. United States*, 137 S. Ct. 1266, 1272 (2017).

# II.

## ISSUES PRESENTED FOR REVIEW

A.    Whether the district court correctly denied the Fishers' first motion to suppress because the warrant affidavit contained no false material statements or omissions.

B.    Whether the district court correctly denied the Fishers' second motion to suppress because the Fishers had no standing to challenge the recovery of evidence that they abandoned by failing to collect it prior to selling their house to a third party more than a year before the search.

# III.

## STATEMENT OF THE CASE

The grand jury for the District of Nevada returned a second superseding indictment on March 12, 2019, charging Justin with Sexual Exploitation of Children in violation of 18 U.S.C. §§ 2251(a) and (e) (Counts One and Two); Distribution of Child Pornography in violation of 18 U.S.C. §§ 2252A(a)(2) and (b)(1) (Count Three); Receipt of Child Pornography in violation of 18 U.S.C. §§ 2252A(a)(2) and (b)(1) (Count Four); Possession of Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) (Counts Five and Six); Coercion and Enticement in violation of 18 U.S.C. § 2422(b) (Count Seven); Conspiracy to Commit Sexual Exploitation of Children in violation of 18

U.S.C. §§ 2251(a) and (e) (Count Twelve); and Conspiracy to Tamper with a Witness or Victim in violation of 18 U.S.C. §§ 1512(b) and (k) (Count Thirteen). SER-3.

The same indictment charged Joshua with Possession of Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) (Counts Six and Ten); Sexual Exploitation of Children in violation of 18 U.S.C. §§ 2251(a) and (e) (Count Eight); Receipt of Child Pornography in violation of 18 U.S.C. §§ 2252A(a)(2) and (b)(1) (Count Nine); Coercion and Enticement in violation of 18 U.S.C. § 2422(b) (Count Eleven); and Conspiracy to Commit Sexual Exploitation of Children in violation of 18 U.S.C. §§ 2251(a) and (e) (Count Twelve). *Id.*

Both defendants pleaded guilty pursuant to plea agreements on July 19, 2019. CR 160, 161; *see* CR 207 (transcript). At a hearing on March 2, 2020, the district court sentenced Justin to 360 months' imprisonment. CR 188; CR 208 (sentencing transcript), at 102. On the same day, the district court sentenced Joshua to 300 months' imprisonment. CR 189; CR 208 (sentencing transcript), at 102. The judgments were entered on the docket on March 5, 2020. 3-ER-321–364.

# IV.

## STATEMENT OF FACTS

## A.   The Investigation

This case began with a CyberTip from Tumblr to the National Center for Missing and Exploited Children (NCMEC) reporting that a user uploaded images of child pornography to the Tumblr photo-sharing social media platform. 2-ER-309.

### 1.   *NCMEC CyberTip*

On May 26, 2016, NCMEC sent CyberTip #10001179 to the Las Vegas Metropolitan Police Department. *Id.* NCMEC received the report from Tumblr on April 27, 2016. *Id.* The CyberTip reported that eight files of apparent child pornography had been uploaded to a Tumblr account. *Id.*; *see also* 2-ER-311-12. More specifically, the CyberTip reported that the "incident" occurred on April 19, 2016, at 14:14:00 UTC and related to "Child Pornography (possession, manufacture, and distribution)." 2-ER-294; 2-ER-311. The CyberTip also listed the reported user:

Email Address:       mcwarson@gmail.com
Screen/User Name:    mcw
Profile URL:         mcw.tumblr.com
IP Address:          50.118.198.254 (other)

2-ER-312.

Additional information provided by Tumblr to NCMEC included "the suspect's last logins" being on April 18, 2016 (the day before the incident) from IP address "50.118.198.254 (CA-San Jose, US)," (the California IP address) and the four other most recent logins all being from IP address "24.253.48.163 (NV-Las Vegas, US)" (the Nevada IP address) on April 11, 2016; April 5, 2016; March 21, 2016; and March 16, 2016. 2-ER-312. The Tumblr CyberTip did not provide a date the upload was made. 2-ER-311. Instead, the CyberTip provided the date when the child pornography images were reported to Tumblr. *Id.* ("Description of Incident Time: DateTime is when this report was created in Tumblr's system."); *see also* 2-ER-143-44 (Detective Scott Miller's testimony that Tumblr allows for users to report suspected child pornography and that the "incident time" in the CyberTip does not reflect when the child pornography was uploaded but instead when it was reported to NCMEC).

The CyberTip included a "Geo-Lookup" of the California IP address, which resolved to the "San Francisco-Oakland-San Jose" area. 2-ER-314. The internet service provider or organization listed in connection with the California IP address was "EGIHosting/Areti Internet." 2-ER-314. Based on this information, Detective Miller immediately recognized the California IP address as likely being a virtual private network (VPN). 2-ER-150. Detective

Miller then further investigated the California IP address and confirmed it was in fact a VPN. *Id.*

The CyberTip also included information from a related CyberTip concerning the Nevada IP address. 2-ER-315. The second CyberTip (CyberTip #10033465) reported that the Nevada IP address had previously uploaded child pornography and that the IP address was owned by Cox Communications and resolved to a physical address in Las Vegas, Nevada. 2-ER-315-17. For this reason, both CyberTips were sent to the Nevada Internet Crimes Against Children (ICAC) team. 2-ER-317.[4]

## 2. *Tumblr Search Warrant*

Upon receiving the CyberTip, Detective Miller sought and obtained a search warrant for Tumblr to identify:

> All Tumblr account information for the following user on/or between the dates of April 19, 2016 through July 01, 2016:
> IP Address: 50.118.198.254 and 24.253.48.163
> Date of Incident: April 19, 2016 at 14:14:00 UTC
> Email Address: mcwarson@gmail.com
> Screen/User Name: mcw
> Profile URL: https://mcw.tumblr.com

SER-27.

---

[4] NCMEC believed the suspect was within the jurisdiction of the Nevada ICAC team, and not any other ICAC team. 2-ER-317 ("Based on IP 25.253.48.163, I will place this report on the VPN for the NV ICAC."). Detective Miller testified to this fact at the evidentiary hearing. 2-ER-148, 155-56.

Detective Miller sought information from Tumblr on the California IP address *and* the Nevada IP address, and focused on the date that the incident occurred, April 19, 2016. *Id.* Detective Miller requested all information as to both IP addresses despite his expectation that he would not receive any content regarding the California IP address because use of a VPN encrypts such content. 2-ER-159. Tumblr responded and provided the following IP logins as being associated with the suspect account.

| IP Address | Login Time |
|---|---|
| 24.253.48.163 | 4/19/16 10:40 |
| 50.118.198.254 | 4/18/16 22:47 |
| 24.253.48.163 | 4/11/16 22:05 |
| 24.253.48.163 | 4/5/16 16:10 |
| 24.253.48.163 | 3/21/16 20:06 |
| 24.253.48.163 | 3/16/16 22:02 |
| 24.253.48.163 | 3/16/16 16:50 |
| 72.201.103.154 | 2/1/16 4:02 |
| 72.201.103.154 | 1/30/16 15:18 |
| 72.201.103.154 | 1/14/16 12:40 |
| 72.201.103.154 | 1/13/16 9:10 |
| 72.201.103.154 | 1/13/16 7:14 |
| 72.201.103.154 | 1/13/16 7:11 |
| 72.201.103.154 | 1/13/16 2:15 |
| 72.201.103.154 | 1/12/16 23:01 |
| 72.201.103.154 | 1/1/16 7:19 |

SER-44. In comparing the list of IP logins to the Cybertip, the Nevada IP address was used to login to the suspect Tumblr account just a few hours before the child pornography images were reported to Tumblr. *Compare id.*

(listing a login on April 19, 2016, at 10:40 AM UTC); *with* 2-ER-311 (listing

an "Incident Time" as April 19, 2016, at 2:14 PM UTC).

Tumblr also provided over 40 child exploitation images that had been

uploaded to the account by the Nevada IP address. 2-ER-161–162. And

because according to Tumblr the last login was on April 19, 2016, from the

Nevada IP address, Detective Miller inferred that the child pornography

included in the CyberTip had been uploaded from the Nevada IP address. 2-

ER-168. As Detective Miller expected, Tumblr did not provide any content

associated with the California IP address.

### 3.   *Identifying the Residence*

Next, LVMPD investigators issued an administrative subpoena to Cox

Communications seeking

> [a] true and accurate copy of your customer records, including the
> name(s), address(es), phone number(s), social security number(s),
> date(s) of birth, email address(es), or other subscriber number or
> identity, and the length of service of the person(s) listed as the
> customer(s) for the following persons identified by the following
> IP, date and time:
>
> IP:          24.253.48.163
> Date:        04-19-2016
> Time:        09:30 hours
> Time Zone: EDT

SER-45.

Cox Communications responded that the Nevada IP address between March 5, 2016, and May 21, 2016, resolved to Justin's residence on Burkehaven Avenue in Las Vegas, Nevada. SER-47–48.

*4.    November 2016 Search Warrant*

Detective Miller then sought a search warrant for the Burkehaven Avenue residence (the 2016 Search Warrant), setting forth the relevant information to establish probable cause in a search warrant affidavit. 2-ER-289–308. Specifically, in his probable cause offering, Detective Miller set forth the following facts:

> On or about April 27, 2016, the National Center for Missing and Exploited Children (NCMEC) received a report from Tumblr reference a possible transmission of child pornography. Tumblr reported the user uploaded 8 images/videos of child sexual exploitation. Tumblr provided the following information regarding the user:
>
> IP Address: 50.118.198.254 and 24.253.48.163
> Date of Incident: April 19, 2016 at 14:14:00 UTC
> Email Address: mcwarson@gmail.com
> Screen/User Name: mcw
> Profile URL: https://mcw.tumblr.com
>
> This report was documented under NCMEC CyberTip #10001179 and forwarded on May 26, 2016 to the Las Vegas Metropolitan Police Department for follow up investigation.
>
> Affiant viewed the 8 uploaded images/videos and deemed two of them to be child pornography. [description of the two videos]

2-ER-294.

Detective Miller also included information he gathered from the Tumblr

search warrant:

> On July 01, 2016, a search warrant was served on Tumblr for all account information regarding Tumblr account: mcwarson@gmail.com, IP address 24.253.48.163, user name: mcw.
>
> On September 16, 2016, Tumblr responded to said search warrant with numerous other images/videos of child exploitation. Affiant viewed these images/videos and deemed over 40 of them to be child pornography. [description of seven images/videos].

2-ER-295–296.

Finally, Detective Miller tied all the information from the CyberTip and

the Tumblr search warrant return together with the administrative subpoena

return when he swore:

> On May 28, 2016, IS Lisa Rowe served an Administrative Subpoena on Cox Communication for subscriber information for this IP address, 24.253.48.163 accessed on April 19, 2016, 09:30 hours EDT.
> . . .
>
> On June 14, 2016, Cox Communication responded with the following: IP address 24.253.48.163 resolves to Justin Fisher, Account #: 1101176-03, address of 10432 Burkehaven Avenue, Las Vegas, NV 89166, and a telephone number of 702-569-xxxx.

2-ER-294–295.

Based on the probable cause appearing in the affidavit, a state court

judge issued the search warrant. 2-ER-300. Law enforcement executed the

warrant on November 21, 2016, seizing 48 items that contained evidence of

child sexual exploitation offenses. 2-ER-251, 306-08. This evidence led to Counts 1-5 and 7-12 in the second superseding indictment.

5.    *July 2018 Search Warrant*

By April 2017, Justin and Joshua were in custody on federal charges. CR 4, 6. Given the nature of the case, conspiracy, and attempts to destroy evidence, the brothers were separated at the detention facility, and were ordered to have no contact with each other outside the presence of counsel. CR 31, 39. Notwithstanding the no-contact order, in June 2017, the Fishers began conspiring on jail calls with their out-of-custody brother "E" to destroy evidence that law enforcement had not found during the execution of the 2016 search. 2-ER-263-64. Justin and Joshua both independently asked "E," in code, to go to the Burkehaven residence and remove devices left in the attic crawl space—without the Fishers' wives knowing and before the house was sold. *Id.* In September 2017, "E" confirmed that "he did go over to the Burkehaven residence and looked in the upstairs attic crawl space, but was unable to locate any item." 2-ER-265.

Shortly thereafter, on September 15, 2017, Justin sold the Burkehaven residence and the house was delivered to the new owners. *Id.* Due to the coded language, and the assertion by "E" that he was not able to locate any items,

law enforcement did not seek another search warrant for the Burkehaven residence at that time. Law enforcement also did not contact the new owner.

Almost a year after the house was sold, on July 9, 2018, the new owner of the Burkehaven residence, "T", came to the Las Vegas office of the FBI unprompted and without being contacted by law enforcement. *Id.* "T" was concerned because he had heard from his new neighbors that the prior owners had been arrested for crimes relating to child pornography. *Id.*

A few days later, on July 12, 2018, Detective Miller contacted "T" and explained the nature of the case. 2-ER-265–266. Detective Miller also explained the coded conversations and that "E" had reportedly not found the hidden devices. *Id.* "T" gave Detective Miller consent to search the upstairs attic crawl space of the Burkehaven residence for any items that the previous owners might have abandoned. 2-ER-266. Detective Miller found a cell phone and two portable SSD drives hidden between the insulation and the wood framing. *Id.* "T" said he had not placed the items in the attic crawl space. *Id.*

After retrieving the devices, Detective Miller sought a search warrant to examine them (the 2018 Search Warrant). 2-ER-229–288. In the affidavit accompanying the proposed federal search warrant, Detective Miller stated his belief that the devices belonged to Justin and Joshua before November 2016 and up through the sale of the Burkehaven residence in September 2017, but

that the Fishers had abandoned and relinquished any possessory or privacy rights in the devices. 2-ER-266–267. Detective Miller wrote that, despite his belief that the items were abandoned, he was seeking the 2018 Search Warrant to examine them out of an abundance of caution. *Id.*

The 2018 Search Warrant was authorized and executed. 2-ER-270. The subsequent search of the devices revealed that the Fishers had compiled and curated evidence of their sexual exploitation of children onto the three devices found in the attic. SER-19. Some of the evidence was duplicative of what was recovered pursuant to the 2016 Search Warrant but other evidence on the devices recovered from the attic also led to Count Six in the Second Superseding Indictment.

## B. The First Motion to Suppress—2016 Search Warrant

In August 2017, the Fishers moved to suppress evidence obtained from the 2016 Search Warrant.[5] CR 41. The Fishers contended that they were entitled to a hearing under *Franks v. Delaware* and alleged the following material omissions:

> (1) Tumblr provided CyberTipline Report #10001179, reporting a user with IP address 50.118.198.254, uploading eight images to a blog, two of which are possible child pornography;

---

[5]     Justin filed the motion to suppress and Joshua filed a motion to join, which was granted. *See* CR 41, 72, 144.

(2) IP address 50.118.198.254, resolves to an unknown person in San Jose;

(3) Three separate IP addresses are associated with the username "mcw" of the blog and have logged in to access the blog from January 1, 2016 and April 19, 2016;

(4) Tumblr does not know when blogs are accessed, only when there is a login made;

(5) It is unknown which IP addresses may have viewed or uploaded the photographs of the blog.

CR 41, at 11. The government responded that the motion was untimely, the first and fifth listed omissions were themselves false and misleading, and the remaining three identified omissions were immaterial. CR 47. But, more importantly, the government noted that the Tumblr search warrant return provided independent probable cause. CR 47, at 18.

Over the government's objection and request for reconsideration, CR 79, the magistrate judge *sua sponte* identified two *different* alleged false statements and omissions and set the matter for an evidentiary hearing. 1-ER-48–49. Specifically, the magistrate judge noted that the statement in the synopsis section of the affidavit—that "*Tumblr* reported a user; 'mcw', screen/user name of mcw, and an IP address of 24.253.48.163 uploaded 8 child exploitation images on their *Tumblr* account"—was "clearly false" because the CyberTip report "did not state that the user uploaded the images

to Tumblr from IP address 24.253.48.163." 1-ER-48. The Court also found that the "Probable Cause Offering" in the affidavit was incomplete "because it failed to disclose that the last reported IP address login prior to the 'incident' was from IP address 50.118.198.254 on April 18, 2016." 1-ER-49.

### 1. *Evidentiary Hearing*

At the outset of the hearing, the government confirmed that the parties would only be addressing the one statement and one omission identified by the magistrate judge. 2-ER-98–100.

Detective Miller testified that the CyberTip itself (when taken in totality and combined with Detective Miller's training and experience) showed that all the child pornography images were uploaded by the Nevada IP address. Detective Miller explained that he identified the California IP address to be a VPN, and that VPNs are usually not a productive investigative lead because the true IP address is not identifiable. 2-ER-150.

Detective Miller also testified that he had sought and obtained a search warrant for the suspect Tumblr account and requested information associated with *both* the California and Nevada IP addresses. 2-ER-161–162, 164–165, 185–186, 189, 191, 200. Tumblr provided content in response, to include 40 images of child pornography that had been uploaded onto the Tumblr account by the Nevada IP address. *Id.* Detective Miller explained that, because the

California IP address was a VPN, any activity on the Tumblr account from that IP address would have been encrypted and no content would have been returned in response to the search warrant. 2-ER-185–186, 189, 191, 200. Therefore, all of the 40 images of child pornography that he received in response to his Tumblr search warrant *must* have been uploaded by the Nevada IP address. *Id.* Detective Miller described seven of those 40 images in the 2016 Search Warrant affidavit. 2-ER-163–164.

FBI Special Agent Andrew Buel testified as an expert in computer forensics and networking, including VPNs. 2-ER-109. SA Buel described VPNs as a way for a user to connect to the internet without revealing their true IP address. 2-ER-103–104. In essence, a user connects to the VPN and then uses the VPN to access the internet, with all the user's activity on the internet being attributed to the IP address associated with the VPN, not the user's true IP address. 2-ER-105–106. SA Buel testified that investigators can quickly determine whether a listed IP address belongs to a VPN hosting company by conducting a public search on the internet. 2-ER-107. When shown the CyberTip from this case, SA Buel stated he immediately recognized the California IP address as belonging to a VPN based on the listed associated "ISP/Org" ("EGIHosting/Areti Internet") and confirmed

that the same would be immediately apparent to trained law enforcement. 2-ER-108–109.

SA Buel also testified that determining a true user's IP address when they have used a VPN is impossible in most cases. 2-ER-112. This is because, in SA Buel's expertise, it is very common for a VPN hosting company to not keep records of connections to its networks. 2-ER-112. And often, multiple users will connect to the same VPN at any given time and VPN hosting companies will likewise not keep track of what those individuals are using the VPN to access. 2-ER-109–110. SA Buel also confirmed that the California IP address belonged to a VPN owned by Anchorfree. *Id.*

Defense expert Leon Mare testified and corroborated Detective Miller's testimony. 2-ER-204–217. Mr. Mare testified that VPNs are used to transfer encrypted data and therefore, in his expert opinion, any content associated with a VPN would not be viewable by outside parties, including law enforcement. 2-ER-208, 216. This was consistent with Detective Miller's testimony that because the content associated with the CyberTip was viewable by Tumblr, NCMEC, and Detective Miller, it could not have come from the VPN IP address.

## 2.    *Report and Recommendation*

The magistrate judge recommended denying the Fishers' motion to suppress, albeit after conducting an incorrect *Franks* analysis. 1-ER-40.[6] In his Report and Recommendation, the magistrate judge included significantly more facts than were previously identified as omissions and struck other facts that were not identified as falsities. 2-ER-36–37.[7] But in any event, the magistrate judge concluded that Detective Miller testified credibly and that he did not intentionally mislead the issuing judge. 1-ER-40. The magistrate judge also held that finding there was probable cause to search Joshua's residence "does not rule out that there was also probable cause to believe that the child pornography images had been uploaded to the Tumblr account on or about April 18-19, 2016 by a person using the VPN IP address[.]" 2-ER-39. The magistrate judge thus explicitly rejected the Fishers' contention that probable cause was an "either/or" proposition. *Id.*

The magistrate judge's Report and Recommendation, however, did not address the government's primary contention. The government argued on

---

[6]    The parties agreed on this point. *See* CR 147, at 3; CR 149 n.4.

[7]    The parties also agreed that the only appropriate "correction" in the context of *Franks* is to (1) strike the falsity and/or (2) add the omission. No other supporting facts may be added or removed from the search warrant. *See* 2-ER-38–39. The district court corrected the error on *de novo* review.

several occasions that, even if all the identified alleged false statements and omissions regarding the CyberTip (those identified by both the defendants and the magistrate judge) were "remedied," the search warrant would still be supported by probable cause based on the Tumblr search warrant. *See, e.g.*, CR 47, at 17-18; CR 79, at 5-6. And the magistrate judge was not the only one who failed to address this contention: the Fishers had at least *seven* opportunities to challenge the independent probable cause arising from the Tumblr search warrant return in the proceedings below, and they failed to do so. *See* CR 149, at 13.

The Fishers filed objections to the Report and Recommendation on the basis that the magistrate judge misapplied the *Franks* standard and erroneously re-wrote the affidavit. CR 147, at 3. The government responded that the conclusion of the Report and Recommendation was correct, albeit with analysis contrary to law and the facts elicited at the hearing. CR 149.

### 3. District Court's Order

The district court conducted *de novo* review and denied the motion to suppress on different grounds. 1-ER-20. The district court first held that the Fishers had not met their burden to obtain a *Franks* hearing. 1-ER-21. The district court next found that the magistrate judge incorrectly read the affidavit to construe Detective Miller's statements as being false or misleading. 1-ER-23.

19

The district court concluded instead that "Det. Miller summarized the chain of his investigation, including the results of the search warrants and subpoena he obtained." *Id.* The district court further found that, even if the affidavit was misleading, there was independent probable cause to support the search warrant. 1-ER-24. Finally, the district court found that the five omissions identified by the Fishers were not themselves false/misleading or material. 1-ER-22–26.

## C.    The Second Motion to Suppress—2018 Search Warrant

In November 2018, the Fishers filed a joint motion to suppress all evidence obtained as a result of the 2018 Search Warrant. CR 117. The Fishers argued that, because the 2018 Search Warrant would not have issued "but for" the 2016 Search Warrant, the results of the 2018 Search Warrant should be suppressed. *Id.* at 5. The government responded that the Fishers lacked standing to challenge the search and seizure of the devices because they relinquished their proprietary and possessory interests when they abandoned the devices prior to the sale of the house to a third party over a year before law enforcement obtained the 2018 Search Warrant. CR 119. Alternatively, the government maintained that the attenuation doctrine made all evidence derived from the 2018 Search Warrant admissible. *Id.*

The magistrate judge and the district judge found that the Fishers had abandoned the items once the house was sold, and therefore, their Fourth Amendment rights were not violated by the subsequent searches of the attic and the devices. 1-ER-16 (R&R); 1-ER-4 (Accepting R&R).

## D.    Plea Agreements and Sentencing

After the district court denied their motions to suppress, the Fishers both entered into plea agreements with the government. CR 162, 164. In their respective plea agreements, both defendants retained their right to appeal the denials of their motions to suppress evidence. *Id.*

At sentencing, the district court sentenced Justin and Joshua to 360 months' imprisonment, and 300 months' imprisonment, respectively. CR 188, 189; 3-ER-321, 343 (judgments). This appeal follows.

## V.

## SUMMARY OF ARGUMENT

The district court properly denied the Fishers' motion to suppress evidence recovered during the 2016 Search Warrant. The Fishers have failed to identify any false statements or misleading omissions in the affidavit. And any false statements or omissions were not the result of a deliberate or reckless effort to mislead the issuing judge, but instead merely summarized Detective Miller's investigation. Finally, none of the challenged statements and

omissions were material to a finding of probable cause, especially considering the fact the Tumblr search warrant conclusively demonstrated that the Nevada IP address was used to upload numerous child pornography images to Tumblr.

The district court also properly denied the Fishers' motion to suppress the fruits of the 2018 Search Warrant. The Fishers failed to carry their burden to show they had a reasonable expectation of privacy in items they abandoned over a year prior to the search. And even if the Fishers had standing over items they left in the residence sold to a bona fide purchaser, and even if the 2016 Search Warrant was somehow deemed invalid, the search of the items left in the attic of the Burkehaven residence was so attenuated that the exclusionary rule should not apply.

## VI.

## ARGUMENT

**A.    The District Court Correctly Denied the Fishers' Motion to Suppress Evidence from the 2016 Search Warrant Because the Warrant Affidavit Contained No False Material Statements or Omissions.**

*1.    Standard of Review*

This Court reviews a district court's denial of a motion to suppress evidence *de novo*, and reviews the factual findings underlying the denial for clear error. *United States v. Norris*, 942 F.3d 902, 907 (9th Cir. 2019).

*2.      Legal Framework*

The Fourth Amendment requires that a search warrant be based on "probable cause, supported by Oath or affirmation[.]" U.S. CONST. AMEND. IV. A law enforcement official seeking the warrant must have established probable cause to believe the evidence sought would assist in finding or convicting a particular defendant for a particular offense. *Bill v. Brewer*, 799 F.3d 1295, 1300 (9th Cir. 2015) (citing *Dalia v. United States*, 441 U.S. 238, 255 (1979)). This probable cause analysis is "practical" and "nontechnical," and it routinely requires judges to draw "reasonable inferences." *Illinois v. Gates*, 462 U.S. 213, 231, 240 (1983) (internal citation and quotations omitted). Affidavits in support of a warrant "must be tested in a commonsense and realistic fashion," and need only include "sufficient underlying circumstances to enable a judge to perform his detached function and not serve as a mere rubber stamp." *United States v. Ventresca*, 380 U.S. 102, 108–109 (1965).

The issuing judge need only find under "'the circumstances set forth in the affidavit before him . . . a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Underwood*, 725 F.3d 1076, 1081 (9th Cir. 2013) (quoting *Gates*, 462 U.S. at 238); *see also Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 307 (1967) (requiring only "cause to believe" the evidence sought "will aid in a particular apprehension or

conviction"). In doing so, the judge must consider the "totality of the circumstances." *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (quoting *Gates*, 462 U.S. at 246). Probable cause requires nothing more than a "'fair probability,' not certainty or even a preponderance of the evidence." *Id.* (quoting *Gates*, 462 U.S. at 246).

Under *Franks v. Delaware*, 438 U.S. 154 (1978), a hearing is warranted where the defendant "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *Id.* at 155–156. The defendant must overcome "a presumption of validity with respect to the affidavit supporting the search warrant." *Id.* at 171. Additionally, the defendant must show that the statement in question is "necessary to the finding of probable cause." *Id.* at 156; *see also United States v. Bennett*, 219 F.3d 1117, 1124 (9th Cir. 2000) (describing the two-part test of (1) deliberately or recklessly making a false statement that is (2) material). A statement is material where "the affidavit purged of its falsities would not be sufficient to support a finding of probable cause." *United States v. Stanert*, 762 F.2d 775, 780 (9th Cir.), *amended*, 769 F.2d 1410 (9th Cir. 1985) (quoting *United States v. Lefkowitz*, 618 F.2d 1313, 1317 (9th Cir. 1980)). Under *United States v. DiCesare*, 765 F.2d 890,

*amended*, 777 F.2d 543 (9th Cir. 1985), this Court requires that the defendant

meet five requirements to be entitled to a *Franks* hearing:

> (1) the defendant must allege specifically which portions of the warrant affidavit are claimed to be false; (2) the defendant must contend that the false statements or omissions were deliberately or recklessly made; (3) a detailed offer of proof, including affidavits, must accompany the allegations; (4) the veracity of only the affiant must be challenged; and (5) the challenged statements must be necessary to find probable cause.

765 F.2d at 894–895.

A defendant may also challenge a warrant "when it contains deliberate

or reckless omissions of facts that tend to mislead." *Stanert*, 762 F.2d at 780–

781. To be entitled to an evidentiary hearing on the matter, "the defendant

[must] make a substantial showing that the affiant intentionally or recklessly

omitted facts required to prevent technically true statements in the affidavit

from being misleading." *Id.* at 781.

Even where certain information is omitted from the affidavit supporting

the warrant, this does not necessarily require that the evidence stemming from

that warrant be suppressed. As is the case with affirmative information, the

omission of information in a way that misleads must be done deliberately or

recklessly. *Id.* "Misstatements resulting from negligence or good faith mistakes

will not invalidate an affidavit which on its face establishes probable cause."

*United States v. Smith*, 588 F.2d 737, 740 (9th Cir. 1978). The omitted facts

must also be material to the finding of probable cause—that is to say, the omitted facts, when included in the affidavit, must "cast doubt on the existence of probable cause." *United States v. Johns*, 948 F.2d 599, 606-607 (9th Cir. 1991) (quoting *United States v. Dennis,* 625 F.2d 782, 791 (8th Cir. 1980)). The affidavit need not be an exhaustive account of all information related to the case. Rather, the affiant "need only show facts adequate to support a finding of probable cause." *Id.* at 606.

### 3. *The warrant affidavit contained no false statements or omissions.*

The district court correctly determined that there were no material falsities or omissions in the 2016 Search Warrant affidavit. With respect to the magistrate judge's concerns, credible testimony from Detective Miller, FBI SA Andrew Buel, and defense expert Leon Mare affirmatively and definitively established that Detective Miller had probable cause to believe that the child pornography images reported in the CyberTip were uploaded by the Nevada IP address, and that they could not have been uploaded from the California IP address because it was a VPN. As all the witnesses testified, content transmitted through a VPN is encrypted and therefore not viewable by outside parties. And because Detective Miller and NCMEC could view the child pornography included in the CyberTip, the only plausible deduction was that it was uploaded from the Nevada IP address.

The government also showed, as the district court recognized, that none of the five statements the Fishers identified were incorrect or material. Of the five alleged misstatements identified by the Fishers below, they focus almost exclusively on their claim that the CyberTip actually reported the California IP address was used to upload eight child pornography images to Tumblr. AOB 19. But this is incorrect. As the evidence showed, Tumblr produced images of child pornography to NCMEC and Detective Miller that could not have come from the California IP address because that IP address was a VPN. And the only other IP address listed in the CyberTip resolved to Justin's Burkehaven residence.

The Fishers claim this case is analogous to *Chism v. Washington State*, 661 F.3d 380, 388 (9th Cir. 2011), where this Court considered an appeal from granting of summary judgment in a civil rights action brought under 42 U.S.C. § 1983. But *Chism* bears little legal or factual resemblance to this case.

There, law enforcement received two CyberTips that certain websites contained child pornography files. 661 F.3d at 384. The CyberTips identified two separate user accounts that were used to create the websites. *Id.* The IP addresses listed in the CyberTips returned to residences in the Washington State area, but law enforcement did not seek search warrants for *either* of those residences. *Id.* at 385. And after law enforcement learned that a different IP

address had been used to login to both suspect accounts, they also did not further investigate or seek a search warrant regarding that IP address. *Id.*

Instead, law enforcement sought a search warrant on the residence of the person who appeared to have paid hosting fees for the websites, without any evidence that the residents had accessed the website or uploaded the child pornography. *Id.* at 385–386. In their search warrant application, the officers incorrectly claimed that the residents had uploaded the child pornography images and used their credit card to purchase them, despite having financial records to the contrary. *Id.*

This case is the factual antithesis of *Chism*. Unlike in *Chism*, Detective Miller followed the IP addresses. His investigation identified two potential IP addresses responsible for the illegal uploads and he quickly surmised that the California IP address was in fact a VPN. Knowing it was unlikely he could identify the true user of a VPN, and recognizing that the use of a VPN would encrypt all content and make the CyberTip impossible to review, Detective Miller appropriately focused on the Nevada IP address. But out of an abundance of investigatory caution, he nevertheless sought a search warrant on the suspect Tumblr account and identified *both* IP addresses, despite his expectation that he would not receive any content associated with the California IP address.

Detective Miller received over 40 additional images of child pornography back, which were all associated with the Nevada IP address. He also learned that the Nevada IP address was used to log in to the Tumblr account mere hours before the child pornography files in the CyberTip were reported to NCMEC. He then properly determined that the user that had uploaded the child pornography onto the Tumblr account likely did so from the residence associated with the Nevada IP address. This is directly contrary to the investigative course in *Chism*, where IP addresses were all but ignored and the search warrant affidavit incorrectly claimed there was evidence that the person who paid hosting fees for the website uploaded the child pornography. Instead of looking broadly at those who may have been associated with the Tumblr account, Detective Miller pinpointed the IP address that was responsible for uploading the child pornography images and developed probable cause to search the associated residence.

The Fishers next claim that Detective Miller's statement that "[a]ffiant has personally viewed files identical to the ones on a computer using Public IP address 24.253.48.163 and determined them to be child pornography" improperly misled the justice of the peace to believe Detective Miller had personally reviewed the computer using the Nevada IP address and found child pornography on it. OB at 19-20. Because the Fishers did not make this

argument in the district court, this Court should decline to consider it. *See*

*United States v. Peterson*, 995 F.3d 1061, 1068 (9th Cir. 2021) (holding an

argument supporting suppression under the Fourth Amendment not made in

district court proceedings is waived on appeal). In any event, the argument is

without merit.

> The section from which the Fishers quote is as follows:

> Due to the fact that this Affiant has identified IP address
> 24.253.48.163 to Justin Fisher, DOB 10/18/1984, phone number(s)
> of 702-569-xxxx, and returning to the address of 10432 Burkehaven
> Avenue, Las Vegas, NV 89166 as having images and/or videos
> depicting the sexual exploitation of children, as well as the fact
> Affiant has personally viewed files identical to the ones on a
> computer using IP address 24.253.48.163 and determined them to
> be child pornography, Affiant believes a search of the 10432
> Burkehaven Avenue, Las Vegas, NV 89166 residence, property, and
> digital items located therein will reveal additional evidence of
> possession of child pornography and distribution of child
> pornography.

2-ER-299. This full quotation makes clear that Detective Miller had not

personally viewed files *on Justin's devices*. 2-ER-299. Instead, Detective Miller

merely summarized what the rest of his search warrant asserts, namely that he

had traced child pornography offenses to the Nevada IP address and therefore

expected to find additional evidence on digital devices at the physical location

associated with that IP address.[8] This was not a false statement and instead appropriately summarized the affidavit.

The Fishers also assert that Detective Miller omitted that the California IP address was the last to log into the suspect Tumblr account prior to the "incident." AOB 20. This assertion is simply incorrect. As the return from the Tumblr search warrant plainly shows, the Nevada IP address was the last to login to the Tumblr account. *See* SER-27 (listing a login from the Nevada IP address on April 19, 2016, at 10:40 AM UTC); 2-ER-311 (listing an "Incident Time" as April 19, 2016, at 2:14 PM UTC). And Detective Miller testified to this fact as one of the reasons he formed the opinion that the Nevada IP address was used to upload the child pornography files included in the CyberTip. 2-ER-168.[9]

> 4. *Detective Miller did not act recklessly or deliberately to mislead the issuing court and none of the alleged misstatements or omissions were material.*

---

[8] Additionally, agreeing that the justice of the peace read the identified statement as the Fishers speculate (without any evidence) would lead to an absurd result, namely that the justice of the peace believed Detective Miller was seeking a search warrant for devices he had already searched.

[9] To the extent the Fishers alternatively contend that Detective Miller should have informed the issuing judge that the CyberTip reported the California IP address as being the last to log in to the Tumblr account prior to the "incident," this argument is also without merit. Because the Tumblr search warrant return indisputably shows the Nevada IP address was in reality the last to log in to the Tumblr account prior to the "incident," the Fishers cannot establish materiality.

But even if this Court presumes the Fishers were correct in their identification of "false" statements and omissions in the search warrant, suppression would be unwarranted because none were the result of a deliberate or reckless attempt to mislead and none were material.

First, the magistrate judge, after hearing the testimony, determined that Detective Miller was credible and did not intentionally mislead the issuing Court. 1-ER-40. Although the magistrate judge declined to make a finding of recklessness and found it a "closer call," an examination of the 2016 Search Warrant requires a finding that Detective Miller did not act recklessly.

Detective Miller did not hide the California IP address or otherwise mislead the issuing court. He summarized the investigatory steps he took which led him to the conclusion that the Nevada IP address was the appropriate focus (and the only investigatory lead upon which he could actually follow up). And those investigatory steps and conclusions were corroborated by the defense's expert at the suppression hearing. Detective Miller's failure to "show his work" and explicitly detail each investigatory step between the CyberTip he received and his factual conclusions about the suspect IP address was, at most, negligent.

On appeal, the Fishers again ignore the independent probable cause that supported the 2016 Search Warrant. That is, even if they were correct as to *all*

the statements and omissions they identify (which they are not), sufficient probable cause existed independent of the CyberTip. As described above, prior to seeking the 2016 Search Warrant, Detective Miller executed a search warrant on the suspect Tumblr account. SER-27. That search warrant returned with at least 40 images of child pornography, all associated with the Nevada IP address. SER-43–44; 2-ER-161–162, 168. The Tumblr search warrant return thus conclusively showed the Nevada IP address was being used to upload child pornography onto the Tumblr account. The Tumblr search warrant and its results were included in the affidavit for the 2016 Search Warrant. *See* 2-ER-295–296. As they did on seven prior occasions below, the Fishers fail to address or even acknowledge this independent probable cause, which necessitates a finding that the alleged false statements and omissions are not material. *Stanert*, 762 F.2d at 780; *Johns*, 948 F.2d at 606–607. But the district court did not ignore this independent probable cause and properly found that it sufficiently supported probable cause to search the Burkehaven residence. *See* 1-ER-22–23, 25.

The Fishers contend that Detective Miller's determination that the California IP address resolved to a VPN was made after the 2016 Search Warrant and therefore cannot be considered. AOB at 23. The record belies this contention. Detective Miller testified he reviewed the CyberTip and saw

that the California IP address was owned by "EGIHosting/Areti Internet" which immediately led him to believe it was a VPN. 2-ER-150. Detective Miller then conducted additional investigation regarding the California IP address and confirmed his suspicion that it was in fact a VPN owned by Anchorfree. *Id.* Contrary to the Fishers' assertions, Detective Miller determined the California IP address belonged to a VPN well before he drafted the 2016 Search Warrant and was, in fact, a fundamental part of his conclusion that the Nevada IP address would lead him to the true suspect.

**B.    The District Court Correctly Denied the Fishers' Motion to Suppress Evidence From the 2018 Search Warrant Because the Fishers Had No Standing to Challenge the Recovery of the Devices, Which They Abandoned by Failing to Collect them Prior to Selling the House to a Third Party More Than a Year Before the Search.**

*1.    Standard of Review*

"The question of whether a particular defendant has standing to challenge the legality of a search is a mixed question of law and fact." *United States v. Gonzalez, Inc.*, 412 F.3d 1102, 1116 (9th Cir. 2005). This Court reviews the legal question of standing *de novo*, and the district court's underlying factual findings for clear error. *Id.*

*2.    The Fishers lack standing to challenge the 2018 Search Warrant.*

To establish standing to challenge a search and seizure, "the defendant must demonstrate that he was the victim of an invasion of privacy," which as

described by the Supreme Court means that they "must either (1) have owned or possessed the seized property *at the time of the seizure*, (2) have had a substantial proprietary or possessory interest in the premises searched, or (3) have been legitimately on the premises when the search occurred." *United States v. Cella*, 568 F.2d 1266, 1280 (9th Cir. 1977) (citation omitted) (emphasis added).

A person who has voluntarily abandoned property lacks standing to complain of its search and seizure. *Id.* at 1283–84. "Abandonment in this context is not meant in the strict property-right sense, but rests instead on whether the person so relinquished his interest in the property that he no longer retains a reasonable expectation of privacy in it at the time of the search." *Id.* (citation omitted). Accordingly, "abandonment is primarily a question of intent, and intent may be inferred from words, acts and other objective facts." *Id.* While the determination is made in light of the totality of the circumstances, the two most important factors are "denial of ownership and physical relinquishment of the property." *United States v. Nordling*, 804 F.2d 1466, 1469 (9th Cir. 1986).

A property owner loses any expectation of privacy once they sell the property to another. *Schneider v. County of San Diego*, 28 F.3d 89, 91–92 (9th Cir. 1994). Likewise, a person cannot exhibit a reasonable expectation of

privacy in items left behind within that property once they have transferred unencumbered title to that property to another. *See id.*; *see also Maisano v. Welcher*, 940 F.2d 499, 503 (9th Cir. 1991).

The 2018 Search Warrant was obtained and executed in July 2018. At that time, the Fishers had no objectively reasonable expectation of privacy in the Burkehaven residence, or in the items they left behind within that residence. Accordingly, neither of the Fishers have standing to complain of the search and seizure of the devices that are the subject of the 2018 Search Warrant.

Joshua provided no evidence that he *ever* had a substantial proprietary or possessory interest in the Burkehaven residence; and the undisputed facts demonstrate that Justin relinquished his interest when he sold the Burkehaven residence to "T" in September 2017. Because both brothers left the items behind in the Burkehaven residence and Justin thereafter transferred title to the Burkehaven residence to "T," both legally denied ownership of the items and the premises (to the world through the Clark County Assessor) and physically relinquished the items and the premises. Even if analyzing abandonment in the heightened strict property-right sense (contrary to established law), the Fishers abandoned the property by giving title of the house and its contents to "T." Nev. Rev. Stat. § 118A.030 (definition of "Abandoned property"). Therefore,

neither brother owned or possessed the seized property at the time of the seizure. *Cella*, 568 F.2d at 1280.

The Fishers cannot show an objectively reasonable expectation of privacy in the attic or the devices in July 2018. *See Smith v. Maryland*, 442 U.S. 735, 740 (1979); *United States v. Ziegler*, 474 F.3d 1184, 1189 (9th Cir. 2007); *United States v. Lopez-Cruz*, 730 F.3d 803, 807 (9th Cir. 2013). As of July 2018, the Fishers cannot show (1) any property or possessory interest in the attic and devices; (2) any right to exclude others from the attic and devices; (3) any precautions they took to secure the attic and devices to maintain their personal privacy; or (4) that they were on the premises or in possession of the attic and devices. *See Lopez-Cruz*, 730 F.3d at 808 (setting forth factors to determine abandonment). The Fishers lack standing.

The Fishers contend they had demonstrable standing based on the efforts they took to hide the property. But the evidence demonstrates that the Fishers subjectively recognized that hiding the items alone was insufficient to maintain a right to possess them, let alone a reasonable expectation of privacy in them. While incarcerated, the Fishers enlisted the help of their brother "E" to retrieve the items from the attic and specifically told "E" he needed to retrieve the devices *before* the residence sold. The Fishers thus subjectively recognized that, once the house was sold, they would have no further ability

to access the devices, exclude others from accessing them, or physically possess them. That the Fishers subsequently sold the residence without obtaining the devices demonstrates that they even *subjectively* relinquished any interest they may have had.

And even if this Court were to presume the Fishers subjectively believed they had not abandoned the property, that subjective belief was not reasonable. There is no authority for the proposition that an individual can leave an item in someone else's home in perpetuity and maintain a reasonable expectation of privacy over that property. *See United States v. Davis*, 624 F.3d 508, 510–511 (9th Cir. 2010) (finding a defendant abandoned a safe that he left in his estranged wife's house and failed to retrieve for over six months). The rule urged by the Fishers in this case would all but eliminate the requirement that a person's subjective expectation of privacy be objectively reasonable, turning decades of Fourth Amendment jurisprudence on its head.

3.      *The attenuated basis exception to the exclusionary rule applies.*

Even if the Fishers met their burden of showing standing over property hidden in a residence they voluntarily sold over a year before (which they did not), and even if the 2016 Search Warrant was invalid (which it was not), the subsequent consensual search followed by the 2018 Search Warrant was so attenuated as to purge any taint. Over 50 years ago, the Supreme Court set

forth the basic standard for analyzing "fruit of the poisonous tree" issues. *Wong Sun v. United States*, 371 U.S. 471, 488 (1963). Since then, the Court has recognized three distinct exceptions to the exclusionary rule: (1) the "independent source" exception; (2) the "inevitable discovery" exception; and (3) the "attenuated basis" exception. *See United States v. Ramirez–Sandoval*, 872 F.2d 1392, 1396 (9th Cir. 1989).

Over 20 years ago, this Court directly analyzed the "attenuated basis" exception and noted the doctrine was the Supreme Court's express rejection of a "but for" causation standard. *United States v. Smith*, 155 F.3d 1051, 1060 (9th Cir. 1998) ("The 'attenuated basis' exception is, at bottom, the manifestation of the courts' consistent rejection of a 'but for' causation standard in 'fruit of the poisonous tree' doctrine."). The Supreme Court has recently explained that, under the attenuation doctrine, "[e]vidence is admissible when the connection between unconstitutional police conduct and the evidence is *remote* or has been *interrupted by some intervening circumstance*." *Utah v. Strieff*, 136 S. Ct. 2056, 2061 (2016) (emphasis added). In determining attenuation, the Court considers three factors: (1) "the temporal proximity of the illegal conduct and the evidence in question," (2) "the presence of intervening circumstances," and (3) "the purpose and flagrancy of the official misconduct." *United States v. Gorman*, 859 F.3d 706, 718 (9th Cir.), *order*

*corrected*, 870 F.3d 963 (9th Cir. 2017) (internal quotations omitted) (quoting *Brown v. Illinois*, 422 U.S. 590, 603–04 (1975)).

As to the first factor, this Court has previously held that continuous surveillance for less than five hours was sufficient to purge any taint. *See United States v. Martinez-Rodriguez*, 633 F. App'x 456 (9th Cir.), *cert. denied*, 137 S. Ct. 321 (2016). Here, the temporal break was exponentially longer than five hours and spanned nearly two years (November 2016 to July 2018). Therefore, this factor weighs heavily against suppression.

Turning to the second factor, myriad intervening circumstances laid at the feet of the Fishers and third parties substantially purged any taint. After the 2016 Search Warrant was executed, Justin remained in the Burkehaven residence for five months before being taken into custody. After the Fishers were detained, months passed and Justin opted to place the Burkehaven residence on the real estate market. Then, Justin and Joshua asked "E" to remove the items before the Burkehaven residence sold. "E" looked for the items but could not find them. Months later, Justin sold the Burkehaven residence to "T." Nearly a year after Justin sold the house, "T" reached out to the FBI unprompted. "T," as the new owner of the house and everything in it, then gave written consent for the seizure and search. None of these actions

were prompted by law enforcement. Each of these independently, and taken together, constitute intervening circumstances to satisfy the second factor.

Finally, no official misconduct occurred relating to the 2018 Search Warrant,[10] and the Fishers cannot point to any. Therefore, this factor, too, overwhelmingly weighs in favor of attenuation.

The Supreme Court and the Ninth Circuit have expressly rejected the but-for test the Fishers suggest.[11] *See Smith*, 155 F.3d at 1060; *see also Segura v. United States*, 468 U.S. 796, 815 (1984) ("The Court has never held that evidence is 'fruit of the poisonous tree' simply because 'it would not have come to light but for the illegal actions of the police.' . . . By the same token, our cases make clear that evidence will not be excluded as 'fruit' unless the

---

[10]    Any claim that the 2018 Search Warrant is invalid because of the "omissions" from the 2016 Search Warrant must fail. The 2018 Search Warrant includes the omissions the Fishers complained of when they challenged the 2016 Search Warrant. *See* 2-ER-246, 248 (noting two IP addresses were associated with the original CyberTip and that Detective Miller was able to determine the Nevada IP address that resolved to the Burkehaven residence uploaded the child pornography listed in the CyberTip). The fact that the 2018 Search Warrant was signed by a federal magistrate judge unfamiliar with the case after the government disclosed the prior motion to suppress (2-ER-251) also demonstrates that the identified "omissions" were not material to a finding of probable cause.

[11]    *See* OB at 26 (contending that but for the 2016 Search Warrant, authorities would not have been able to secure the 2018 Search Warrant); *see also* CR 117, at 2.

illegality is at least the 'but for' cause of the discovery of the evidence.")
(internal citations and quotations omitted).

Although the exclusionary rule of the Fourth Amendment excludes unlawfully seized evidence in a criminal trial, the rule is only applicable "when deterrence benefits outweigh its substantial social costs." *Penn. Bd. of Probation & Parole v. Scott*, 524 U.S. 357, 363 (1998) (citation omitted). In that regard, suppression is "always" a "last resort," and evidence should not be suppressed when there is no deterrence benefit. *Strieff*, 136 S. Ct. at 2061. As the 2018 Search Warrant is attenuated from the 2016 Search Warrant by years, and law enforcement obtained a search warrant out of an abundance of caution after getting written consent from the new owner, suppression carries no deterrent effect. The Fishers' arguments fail, and the district court did not err.

# VII.

## CONCLUSION

For the reasons stated above, the United States respectfully requests that this Court affirm the judgments.

Dated this 24th day of June 2022.

Respectfully submitted,

JASON M. FRIERSON
United States Attorney

ELIZABETH O. WHITE
Appellate Chief

*s/ Christopher Burton*
CHRISTOPHER BURTON
Assistant United States Attorney
501 Las Vegas Blvd S., Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336
*Attorneys for the United States*

# VIII.

## STATEMENT OF RELATED CASES

The United States is unaware of any cases related to the instant appeal currently pending before this Court.

Dated this 24th day of June 2022.

s/ Christopher Burton
CHRISTOPHER BURTON
Assistant United States Attorney

**CERTIFICATE OF COMPLIANCE PURSUANT TO**
**FED. R. APP. P. 32(a)(7)(C) AND CIRCUIT RULE 32-1**

I hereby certify that:

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, the attached **GOVERNMENT'S ANSWERING BRIEF** is proportionately spaced, has a typeface of 14 points, and contains 9,135 words, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

Dated this 24th day of June 2022.

*s/ Christopher Burton*
CHRISTOPHER BURTON
Assistant United States Attorney